IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICHAEL VRBA, Y49327,                    )
                                         )
                    Plaintiff,           )
                                         )
vs.                                      )
                                         )    Case No. 25-cv-2173-DWD
WEXFORD HEALTH SOURCES INC.,             )
MARION EYE CENTER,                       )
ANDREW IBISCH,                           )
DESAI,                                   )
CHRISTINE BROWN,                         )
JANE DOES 1-2,                           )
JOHN DOE 1,                              )
                                         )
                    Defendants.          )

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Michael Vrba, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Illinois River Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Pinckneyville Correctional Center. (Doc. 1). Plaintiff alleges the defendants violated his rights in May of 2024 based on their handling of an issue with contact lenses. Plaintiff's Complaint (Doc. 1) was dismissed as insufficient to state a claim and his Amended Complaint (Doc. 14) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may

be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Amended Complaint

Plaintiff alleges that he began to experience double vision on June 19, 2023, and he was seen by Defendant Desai on July 3, 2023. (Doc. 14 at 6). Desai recommended an outside consultation, which Defendant Brown scheduled after Defendant Wexford approved it. (*Id.*). Plaintiff first saw Defendant Ibish at Marion Eye Center in July of 2023, at which time Ibish commented that Plaintiff's severe stigmatism may require further specialist care. Plaintiff returned to Pinckneyville, debriefed with Desai, and raised a concern about Ibish's ability to help him. (*Id.*). Plaintiff saw Ibish again in December of 2023 and the only option Ibish could offer was contacts. (*Id.*). Plaintiff sought a prison transfer to Dixon for better vision care, but Defendant Brown stated in response to the grievance that he was already scheduled to see Ibish for contacts in February of 2024. Plaintiff ultimately states that he was seen by Brown and Ibish every few weeks after December of 2023 for contact lens fittings that had to be stopped due to eye irritation and swelling. (Doc. 14 at 6).

Plaintiff alleges that after every visit with Ibish, he saw Desai. (Doc. 14 at 6-7). On May 22, 2024, Plaintiff saw Ibish in the morning and Ibish inserted contact lenses. He claims that upon return to Pinckneyville he informed Defendant Jane Doe 2 about eye irritation, but she merely advised him to wait to see Desai. (*Id.* at 7). Plaintiff claims that

at 45-minute intervals, he pleaded with Defendant John Doe to be seen because his vision was deteriorating and the swelling was becoming more noticeable. (*Id.*). He claims he heard a "pop" from his eyes and made another plea for help. Plaintiff made his first request to Jane Doe 2 around 11:30am, and he was seen by Desai around 14:45. Jane Does 1 and 2 tried several methods to remove the contacts, but they were unsuccessful, and the contacts were merely pushed around Plaintiff's eyes. (*Id.* at 7-8). About an hour later Plaintiff was taken back to Ibish and the lenses were removed. Ibish provided gel eye drops and indicated they could try the contacts next year. (*Id.* at 8).

Back at Pinckneyville, Plaintiff consulted with Desai again around 16:15. (Doc. 14 at 8). Desai flushed Plaintiff's eyes, and he asked her to release his medical hold concerning his eyes so that he could be transferred to another prison. (*Id.*). Plaintiff alleges he returned to his cell without the ability to see. A few days later, Jane Doe 1 recommended an eye patch, and Plaintiff was seen by Desai and provided a patch. (*Id.* at 8-9). Plaintiff alleges that from the incident he suffered glaucoma from the swelling and trauma, and he suffered retina damage. (*Id.* at 7). He claims he was diagnosed with these injuries at the Illinois Eye Center, and that he was informed he had a vision impairment. (*Id.* at 9). Plaintiff faults the defendants for deliberate indifference that caused him serious harm. He also alleges that as a contractor, Wexford should be held liable for the alleged misdeeds that caused him harm. (*Id.*). Plaintiff seeks money damages and an "injunction." (*Id.* at 11).

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir.

2010). A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard). *Id.* To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference. *Id.* Additionally, an inmate is not entitled to demand specific care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

Plaintiff's complaint simply does not suggest deliberate indifference by the named defendants. Each time that he presented to the medical staff with an issue, staff took steps to treat the situation. Although it appears that Plaintiff had some ongoing issues, staff were responsive, sending him for multiple external visits and monitoring his progress after and between each appointment. Plaintiff may be implying that he had several failed attempts with contact lenses, but his allegations do not support an inference that staff acted with total disregard for his well being or that they knew serious harm would occur. At most, Plaintiff's allegations against the medical providers might suggest negligence or medical malpractice, but neither of these things are enough to substantiate a claim of deliberate indifference. Plaintiff may not proceed against Defendants Ibish, Desai, or Jane Does 1 and 2 for their ongoing treatment of his eye issues.

Plaintiff also alleges that John Doe 1 was deliberately indifferent on the day he had an adverse reaction to the contacts because he asked John Doe 1 several times over the

course of a few hours for immediate assistance.  Generally, a single interaction with staff that does not have any medical expertise is not enough to maintain a claim for deliberate indifference to a serious medical issue.  *See e.g.*, *Owens v. Duncan*, 788 F. App'x 371, 374 (7th Cir. 2019) (a single interaction with staff at sick call did not amount to deliberate indifference); *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) ("isolated instances of neglect … cannot support a finding of deliberate indifference").  Though Plaintiff alleges that his symptoms became visually obvious to fellow inmates, he does not say John Doe 1 directly observed his condition, nor that John Doe 1 intentionally delayed care despite knowing he was at risk of serious harm.  The handful of interactions on a single occasion about Plaintiff's desire for rapid care are not enough to maintain a claim for deliberate indifference.

Finally, Plaintiff named Wexford Health Sources, Inc., but he does not allege that Wexford maintained a policy, custom, or practice that caused the situation he describes.  Without any such allegation, his assertions against Wexford are insufficient to proceed.  *See e.g.*, *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (under *Monell*, for plaintiff to recover from Wexford, he must show that the alleged constitutional violation was caused by: (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice; or (3) a person with final policymaking authority).  Instead, he merely alleges that as the medical contractor, Wexford should be held liable, but there is no *respondeat superior* liability under § 1983 and this unadorned assertion is not enough to demonstrate *Monell* liability on behalf of Wexford.  *See e.g., Howell v.*

*Wexford Health Sources, Inc.*, 987 F.3d 647, 653-54 (7th Cir. 2021) (circuit precedent establishes that private corporations acting under color of state law cannot be held liable for an employee's misdeeds, and thus liability turns on if the harm was caused by a corporate policy or custom); *Shields v. Illinois Dept. of Corr.*, 746 F.3d at 789 (a private corporation cannot be held liable under § 1983 unless the constitutional violation was caused by the corporation itself, and not simply by acts of its employees).  Therefore, Plaintiff's allegations against Wexford are insufficient to proceed.

Having reviewed Plaintiff's allegations twice with little meaningful variation between the pleadings, the Court finds it unnecessary to invite further amendments. *See e.g. Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022) (amendment would be futile if plaintiff already had multiple chances to cure deficiencies); *Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 707 (7th Cir. 2021) (courts may deny leave to amend if an amendment would be futile); *McCree v. Grissom*, 657 F.3d 623, 624 (7th Cir. 2011) (leave to amend shall be granted where justice so requires, but leave to amend need not be given if an amendment to the complaint would be futile).  As such, this case is now dismissed for failure to state a claim under 28 U.S.C. § 1915A. This dismissal shall count as a strike for purposes of 28 U.S.C. § 1915(g).

### Disposition

Plaintiff's Amended Complaint (Doc. 14) is **DISMISSED** with prejudice for failure to state a claim under 28 U.S.C. § 1915A. The Clerk of Court shall enter judgment and **CLOSE** this case.

If Plaintiff wishes to appeal this Order, he must file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If Plaintiff chooses to appeal, he will be liable for the $605.00 filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-56 (7th Cir. 2008). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may incur another "strike" under 28 U.S.C. § 1915(g). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no later than 28 days after the entry of judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

Dated: June 2, 2026

DAVID W. DUGAN
United States District Judge